Lee Ann BUSH, as Executrix of the Estate of Virginia A. Groff and Lee Ann Bush, Amy Groff Ciafi, Harry Groff, Sally Reissman, and Carol S. Marconi, Plaintiffs Below, Appellants,

v.

The HMO OF DELAWARE, INC., Paul Nicholasen, M.D., Robert Ghrist, M.D., University of Delaware, and Lori Talbot, M.D., Defendants Below, Appellees.

No. 420, 1996.

Supreme Court of Delaware.

Submitted: Nov. 12, 1997.

Decided: Dec. 1, 1997.

Richard R. Wier, Jr., Wilmington, for Appellants.

Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, for Appellees The HMO of Delaware and Dr. Paul J. Nicholasen, Jr.

F. Alton Tybout, Tybout, Redfearn & Pell, Wilmington, for Appellees University of Delaware and Lori Talbot, M.D.

Sherry C. McReynolds, Morris, James Hitchens & Williams, Wilmington, for Appellee Robert M. Ghrist, M.D.

Before WALSH and BERGER, JJ., and BALICK, Vice Chancellor.*

PER CURIAM.

This is an appeal following an adverse verdict in the Superior Court by a plaintiff in a medical malpractice action. The plaintiff-appellant contends that the Superior Court erred by precluding, in part, the rebuttal testimony of an expert witness. It is also claimed that the trial court erred by instructing the jury concerning the plaintiff's duty to exercise reasonable diligence in attempting to ascertain the basis for the alleged acts of malpractice within the two year period for the bringing of such claims.

We conclude that the Superior Court properly exercised its discretion in its partial exclusion of the rebuttal testimony of plaintiff's expert witness. Our affirmance of the Superior Court's testimony restriction ruling resolves plaintiff's claim directed to the jury's finding that the medical care providers-defendants are not liable. Accordingly, the subsequent jury findings on the statute of limitations were irrelevant and unnecessary, and plaintiff's claim with respect to that issue is moot.

## I

The patient whose treatment is the subject of this litigation, Virginia A. Groff, was an employee at the University of Delaware who sought treatment at the University's Student Health Center, on December 14, 1987, for complaints of pain in the left rib area and shoulder.[1] She was seen there by Dr. Lori Talbot, a physician employed by the University of Delaware, who ordered an x-ray and examined the x-ray film that day. Dr. Talbot testified that she advised Plaintiff that there was a problem. A later reading of the x-ray by a radiologist revealed a small area of infiltration in the right upper lung field. Because the problem was not work-related, however, Plaintiff was advised to consult her own physician to follow up on the problem.

Plaintiff was a member of The HMO of Delaware, Inc. ("HMO") and sought their assistance as her primary health care provider. Dr. Talbot also testified that, on December 14, 1987, she had related the abnormality on the x-ray, in Plaintiff's presence, to Dr. Paul J. Nicholasen, Jr., an HMO physician.

Plaintiff telephoned Dr. Robert M. Ghrist, a primary care physician at the HMO, concerning her problem on January 4, 1988. Dr. Ghrist testified that Plaintiff told him by telephone that she had an abnormal chest x-ray and that the radiologist's report was being forwarded to the HMO. Dr. Ghrist claimed that he advised Plaintiff to call him in a week if she had not heard from him about the report. Dr. Ghrist left the HMO the following month without any further contact with Plaintiff and without receiving the radiologist report.

Plaintiff did consult and was treated by Dr. Stephen Mendalino of the HMO, after Dr. Ghrist's departure, for symptoms not related to the chest x-ray. In January 1990, Plaintiff was diagnosed with lung cancer and sought treatment from Dr. Mendalino. She underwent lung resection surgery by Dr. Allen A. Davies, a thoracic surgeon, later in 1990, but her condition proved inoperable. Plaintiff filed her complaint in the Superior Court on April 2, 1990. All defendants raised the defense of statute of limitations.

At trial, Mrs. Groff's deposition was read to the jury. Essentially, she denied that any of the three different physicians she consulted, Dr. Talbot, Dr. Ghrist, or Dr. Nicholasen, ever advised her of the abnormal x-ray of December 14, 1987 and asserted that she was ignorant of her condition until January 1990. She contended that, had the defendants timely advised her of her condition, she could have received medical treatment to improve her chances of survival. At trial, she presented expert evidence to that effect.

Prior to trial, Dr. Davies had been deposed by the defendants. In addition to describing his treatment of Mrs. Groff, Dr. Davies was

---

* Appointed pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rule 2(a).

1. Virginia A. Groff died during the pendency of the litigation in the Superior Court and her estate was substituted in her stead. Our use of "Plaintiff" is intended to refer to Mrs. Groff unless otherwise indicated.

asked what would have been the effect on Mrs. Groff if Dr. Davies had seen her x-rays in 1987. He replied, "I would have liked to have had her in 1987. Okay. That's all I can say, to at least to have looked at the x-rays. That's all I can say." In the pretrial stipulation, Dr. Davies was listed as a witness for plaintiff and identified as "Expert on liability and proximate cause and fact witness."

The jury was instructed to render its verdict in the form of answers to twelve interrogatories but found it necessary to answer only seven. In the first three answers, the jury determined, respectively, that Dr. Talbot, Dr. Ghrist and Dr. Nicholasen did not commit "medical malpractice proximately causing Mrs. Groff's injuries." In the fourth interrogatory answer, the jury found that Mrs. Groff was not negligent in any manner causing her own injuries. In answer No. 5, the jury answered "No" to the question whether Mrs. Groff knew that there was cancer or a new abnormality on her December 14, 1987 chest x-ray on or before January 4, 1988. The jury answered "Yes" to the sixth interrogatory, which asked whether Mrs. Groff, "with reasonable diligence could have known that there was cancer or a new abnormality on her December 4, 1987 chest x-ray on or before January 4, 1988." The jury also indicated in answer 7 that Mrs. Groff did not exercise "such reasonable diligence."

## II

Plaintiff's first claimed error is that the Superior Court improperly ruled that the testimony of Dr. Davies, called as a rebuttal witness by plaintiff, would be restricted to the scope of his pretrial deposition. The Superior Court so ruled because Plaintiff had neither identified Dr. Davies as an expert during discovery, nor provided defendants with the "substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds of each opinion," as required by Super.Ct.Civ.R. 26(b)(4)(A)(I). Plaintiff contends this restrictive ruling was prejudicial error because Dr. Davies had been identified as an expert in the pretrial stipulation.

■ We review the Superior Court's ruling restricting the testimony of an expert witness under an abuse of discretion standard. *Pinkett v. Brittingham,* Del.Supr., 567 A.2d 858, 860 (1989).

■ This Court has ruled that the requirement of a party to comply with discovery directed to identification of expert witnesses and disclosure of the substance of their expected opinion is a pre-condition to the admissibility of expert testimony at trial. *Stafford v. Sears, Roebuck & Co.,* Del.Supr., 413 A.2d 1238 (1980). Contrary to Plaintiff's assertion, the discovery deficiency was not cured by the identification of Dr. Davies in the pretrial stipulation as an expert in the area of "liability and proximate cause and fact witness." As the defendants correctly note, Dr. Davies had been deposed long before trial and, at that time, had declined to offer any opinion on whether the defendants had breached the applicable standard of medical care. The "substance" of his proposed testimony was contained in his deposition, and the defendants were entitled to rely upon that expression in anticipation of trial.

The trial court's ruling, which permitted Dr. Davies to testify in disclosed areas of his expertise but not in matters lacking discovery, is consistent with a previous ruling of this court. *See Cloroben Chem. Corp. v. Comegys,* Del.Supr., 464 A.2d 887, 893 (1983). We also note that the trial court's ruling restricting Dr. Davies' expert testimony did not deprive plaintiff of expert testimony on the standard of medical care and proximate cause sufficient to present a jury issue on medical malpractice. Plaintiffs presented the testimony of three other medical experts, properly identified in discovery, on those issues. Under the circumstances, we find no basis for concluding that the Superior Court abused its discretion in restricting Dr. Davies testimony and affirm its ruling.

## III

■ Our affirmance of the ruling of the Superior Court restricting expert testimony disposes of the only issue in this appeal directed to defendants' liability for medical malpractice. In its answer to the first three

interrogatories, the jury absolved all three defendants of any liability in connection with Mrs. Groff's illness. The remaining issue on appeal, directed to whether the jury was properly instructed regarding Mrs. Groff's diligence in bringing her claim within the statute of limitations, is rendered moot by the jury's finding of no liability. Even if it be assumed that Mrs. Groff's complaint was timely filed, such a determination is of no consequence if the complaint is not sustainable at trial. Accordingly, that claim of error is deemed moot.

The judgment of the Superior Court is AFFIRMED.