**Heather E. TURNER, Plaintiff Below, Appellant,**

v.

**DELAWARE SURGICAL GROUP, P.A., Eric D. Kalish, M.D. and Michael K. Conway, M.D., Defendants Below, Appellees.**

No. 410, 2012.

Supreme Court of Delaware.

Submitted: May 8, 2013.
Decided: June 11, 2013.

Francis J. Murphy, Esquire (argued) and Lauren A. Cirrinicione, Esquire, Murphy & Landon, Wilmington, Delaware, for appellant.

Bradley J. Goewert, Esquire (argued) and Thomas J. Marcoz, Jr., Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for appellees.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

The plaintiff-appellant, Heather E. Turner ("Turner"), appeals from a Superior Court judgment in favor of the defendants-appellees, Michael Conway, M.D., ("Dr.Conway"), Eric D. Kalish, M.D., ("Dr.Kalish"), and their practice, Delaware Surgical Group, P.A. Turner filed a complaint alleging medical negligence against Dr. Kalish, Dr. Conway, and Delaware Surgical Group, P.A. (collectively, "defendants" or "appellees"). Turner alleged that the decisions to perform two separate surgeries for bowel obstructions and the manner the procedures were performed fell below the applicable standard of medical care. Following a trial, the jury returned a verdict in favor of the defendants.

On appeal, Turner challenges two evidentiary rulings made in the course of trial. First, Turner argues that the trial court abused its discretion by permitting Dr. Kalish to testify as an expert on critical matters related to his own liability because, although Dr. Kalish had been identified as a possible expert witness, the expert disclosure did not properly identify any opinions that he was expected to give at trial. Second, Turner contends that she was denied a fair trial when the trial court prohibited her from cross-examining Dr. Conway or examining any other witnesses about the timeliness and completeness of Dr. Conway's operative report for her second bowel surgery, which he dictated fifty-two days after the surgery. According to Turner, that delay was "allegedly in violation of a longstanding rule at Christiana Hospital, which requires surgeons to dictate their reports before there is a change in the patient's level of care and preferably within twenty-four hours." Turner also argues even if the trial court did not abuse its discretion in excluding evidence of the 24–hour rule to prove the defendants' negligence, the trial court should have admitted the evidence for the limited purpose of impeaching Dr. Conway's testimony, who denied knowledge of the rule at his deposition.

We have concluded that, in the absence of proper disclosure, the admission into evidence of Dr. Kalish's expert opinions constituted reversible error. We address Turner's 24–hour rule arguments because this matter must be remanded for a new trial.

### Facts

Turner has undergone a series of surgeries. On July 24, 2007, Dr. Kalish performed a laparoscopic appendectomy on Turner at Christiana Hospital. On August 1, 2007, after complaining of abdominal pain, Turner was readmitted to Christiana Hospital and subsequently diagnosed with a partial small bowel obstruction. The following day, Dr. Kalish performed a second surgery, where he removed approximately two centimeters (about one inch) of Turner's small bowel.

On November 30, 2007, Turner was again admitted to Christiana Hospital and diagnosed with a small bowel obstruction. On December 2, 2007, Dr. Conway addressed the obstruction surgically by removing a portion of Turner's small bowel. Later, in 2008, Turner again experienced abdominal pain and a mass was subsequently discovered on her liver. Dr. Joseph Bennett ("Dr.Bennett") removed the mass on September 26, 2008, through a laparoscopic surgical procedure. In a letter to Turner's gastroenterologist, Dr. Bennett said that the mass "raised the concern about something that had spilled out from prior surgeries."

Finally, on January 10, 2012, Turner underwent a final surgery to repair a large ventral incisional hernia allegedly caused

by the prior two laparoscopic surgeries performed by Dr. Kalish and Dr. Conway.[1]

### Expert Testimony Challenged

Turner contends that the "trial court abused its discretion by permitting Dr. Kalish to give expert testimony and opinions at trial when [his attorney] never gave proper notice to Turner in his expert disclosure or deposition." According to Turner, the substance of Dr. Kalish's expert testimony at trial did not comport with either the notice requirements set forth in Superior Court Civil Rules 16(e) and 26(e) or this Court's opinion in *Barrow v. Abramowicz*.[2] Therefore, Turner submits that expert testimony was improperly admitted into evidence at trial. We agree, and because that evidence materially prejudiced Turner's trial, the case must be remanded for a new trial.

### Disclosure Requirements

The disclosure requirements for identifying an expert and an expert's opinion are well-established in the Superior Court Civil Rules. First, the disclosure of Dr. Kalish as an expert, along with his accompanying expert opinion, must comply with the Superior Court Civil Rule ("Rule") 16(e) trial scheduling order. Second, those same disclosures must comply with Rule 26(e)(1), which requires, in relevant part, that "[a] party is under a duty seasonably to supplement the response with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is ex-

pected to testify, and the substance of the person's testimony."

■ In *Bush v. HMO of Delaware, Inc.*,[3] this Court held that parties must comply with discovery directed at the identification of experts and the "substance of their expected opinion" as prerequisites for the introduction of their expert testimony at trial.[4] A physician-defendant must satisfy the same prerequisites as any testifying expert. In *Barrow v. Abramowicz*, we identified those prerequisites: "(i) a timely identification of his role as an expert; and, (ii), a timely disclosure of his opinions and the bases for his opinions."[5] As this Court explained, "a defendant doctor wishing to so testify must give notice to an opposing party to give that party a fair opportunity to meet that 'expert' opinion on the same basis as any other expert opinion.... Without this notice, the other party cannot properly prepare for trial."[6]

### Disclosure Inadequate

Turner acknowledges that Dr. Kalish was identified as both a fact and an expert witness. Accordingly, Dr. Kalish's identification as an expert satisfies prong one of the *Barrow* prerequisites. Turner instead challenges the second prerequisite, and asserts that "the defense did not disclose any information whatsoever about [Dr. Kalish's] alleged 'expert opinions' and never mentioned that Dr. Kalish would opine that the post-surgery pathology report proved that he was not negligent."

The defendants' disclosure of Dr. Kalish as an expert was contained in an April 12,

---

1. The ventral incisional hernia and the surgery performed by Dr. Bennett to remove a mass on Turner's liver are not alleged to have been performed negligently.

2. *Barrow v. Abramowicz*, 931 A.2d 424 (Del. 2007).

3. *Bush v. HMO of Delaware, Inc.*, 702 A.2d 921 (Del.1997).

4. *Id.* at 923.

5. *Barrow v. Abramowicz*, 931 A.2d at 434.

6. *Id.* at 433, 434.

2011 response to Turner's request for interrogatories, and reads in its entirety: "C. Eric Kalish, M.D.: To the extent deemed necessary under Court rules for expert witness disclosure requirements, where the opinions of Dr. Kalish may be considered expert opinions, he will testify accordingly and as set forth in his deposition and the medical records." [7]

## Objections At Trial

Turner objected to Dr. Kalish's testimony at trial as not being previously disclosed in his deposition or in the medical records. Specifically, Turner objected to Dr. Kalish's testimony regarding the "postsurgery pathology report, [and] his conclusions based upon the report." The post-surgery pathology report was prepared on August 8, 2007, one day after Turner was discharged from the hospital.

The pathology report analyzed the one-inch piece of bowel Dr. Kalish removed. The record reflects that as soon as defense counsel asked Dr. Kalish at trial about the surgical pathology report, Turner's counsel immediately objected. The following took place at a sidebar:

Plaintiff's Counsel: I have a concern. I am concerned about this pathology report. I understand he can say that he doesn't have the benefit of the reports, that's fine. He's here to testify as a fact witness, not as an expert witness. Your Honor, there's been no Answers to Interrogatories, I can recall, and no questioning at his deposition by me or defense counsel about what does that pathology report mean. *I assume we're not going to have him expressing opinions about what the pathology report means or the microscopic description or any of that.*

Defense Counsel: Your Honor, he was disclosed as an expert in accordance with the rules in my disclosure I say that not only is he a defendant but he's disclosed as an expert. It's also referenced in the pretrial conference order, and that is a pathology report from his surgery that he's entitled to explain.

The Court: He is one of the defendants, he performed the surgery. It's not uncommon for a treating physician, which he was, in part to, or most entirely in part to express expert opinions when it directly relates to something they know about and is relevant to the case, so I'm going to overrule plaintiff's objection and allow the doctor to discuss the pathology report to the extent he's able to.

Plaintiff's Counsel: Your Honor, may I make one point to make sure the record is clear, and I misspoke to the extent to say that they identify him as an expert. The expert disclosure just has their name, it has no description whatsoever of any expert opinions that they are going to give or anything like that, so I have been given absolutely . . . nothing at all about . . . Dr. Kalish, so while you can list their name on that Interrogatory answer, unless you disclose their opinions, that's not fair.

The Court: I'll treat this as a motion for reargument. In response?

Defense Counsel: No new grounds.

The Court: I still think that it's permissible for this witness to give at least this testimony on the pathology report. Being the treating physician,

---

7. Dr. Kalish was also identified as a "fact and expert witness" in the parties' Pretrial Stipulation and Order.

it's within his competence to do so, you can test that on cross-examination. . . . [O]bjection overruled.

The record reflects that plaintiff's counsel was concerned that Dr. Kalish was going to testify about, among other things, what the pathology report meant and the report's microscopic description.

In fact, testimony· on these issues was elicited soon after Turner's objection was overruled. Discussing the microscopic description in the postsurgery pathology report, Dr. Kalish testified that "the term microscopic here, I think was strongly stated yesterday. Microscopic doesn't mean minute and it doesn't mean subatomic. It's a section under the microscope. These are things that the naked eye can see. This is not a super incredibly small nothing, I mean, this is not normal bowel."

Dr. Kalish then testified as to the meaning of other abnormalities identified in the pathology report. For example, Dr. Kalish testified as to the meaning of the reference in the pathology report to "transmural," opining that all layers of the bowel had an abnormality. Then, the following exchange took place regarding ischemic change and liquefaction, abnormalities discovered and reported in the post-surgery pathology report:

Defense Counsel: And then [the pathology report] talks about ulceration might represent localized ischemic change. Ischemic is loss of blood supply?

Dr. Kalish: Ischemic is why we operate.

Defense Counsel: If you waited with a bowel like this, this is early signs of an abnormal bowel, correct?

Dr. Kalish: Correct.

Defense Counsel: If you waited with a bowel like this, what happens, can it necrose?

Dr. Kalish: Then you get the purplish discoloration, the dark purple, black, what's called liquefaction. That's when the tissue becomes soft and truly does, you grab it and it just melts. If you operate and see that, you are in there too late.

### Testimony Admitted Erroneously

Before trial, the parties stipulated that one of Turner's causes of action was that the "August 2, 2007 small bowel resection surgery by Dr. Kalish was neither medically indicated nor properly performed, and therefore, Dr. Kalish breached the standard of care." Thus, Dr. Kalish's decision to perform the surgery was very much at issue.

It is undisputed that Dr. Kalish was not deposed regarding what was contained in the pathology report. Nevertheless, at trial, Dr. Kalish was permitted to provide an expert opinion that he was not negligent in both deciding to perform the surgery and in performing the surgery. In particular, he opined that the pathology report proved that he was correct in removing one inch of small bowel from Turner's body because the microscopic pathology showed that there was an abnormality in the bowel which could have turned dark purple and black if he had not removed it.

Well settled Delaware law requires parties to disclose, before trial: 1) any experts and 2) their opinions and the facts upon which those opinions are based. The trial judge's ruling, which did not acknowledge the prior non-disclosure of Dr. Kalish's opinions and factual bases for those opinions, is contrary to settled precepts. Instead, the trial judge ruled:

He is one of the defendants, he performed the surgery. It's not uncommon for a treating physician, which he was, in part to, or most entirely in part to express expert opinions when it directly

relates to something they know about and is relevant to the case, so I'm going to overrule plaintiff's objection and allow the doctor to discuss the pathology report to the extent he's able to.

This ruling does not comport with Rules 16(e) and 26(e) or this Court's prior ruling in *Barrow v. Abramowicz.*[8] Accordingly, the record reflects that the trial judge abused his discretion in overruling the plaintiff's objection by permitting Dr. Kalish to render an expert opinion on the significance of the pathology report, because Dr. Kalish never provided an expert report or otherwise (at his deposition) disclosed his expert opinions prior to trial.[9]

### Material Prejudice

■ Since we have concluded that the trial court abused its discretion, "we must [now] determine whether the mistake[ ] 'constituted significant prejudice so as to have denied the appellant a fair trial.'"[10] Dr. Kalish's expert testimony about the significance of the pathology report was material to a central issue to be decided by the jury because it directly refuted Turner's claim that the decision to operate itself was incorrect. Moreover, Dr. Kalish did this by relying on information in the pathology report that Dr. Kalish did not have when he made the determination to operate. Dr. Kalish's expert opinions also directly contradicted Turner's expert, Dr. Beaton, even though Turner was not notified of these opinions by proper disclosure before trial, as required by Rules 16 and 26.

The record reflects that the erroneous admission of Dr. Kalish's undisclosed expert testimony caused significant prejudice to Turner.[11] It deprived Turner of an opportunity to prepare an effective cross-examination of Dr. Kalish, to prepare her own expert witness effectively, to take additional discovery, or to retain and identify a second expert for trial to contradict Dr. Kalish. By allowing Dr. Kalish to testify as an expert on liability, the defense was able to present two experts—Dr. Kalish and Dr. Kirkland—to rebut Turner's single medical expert on liability. Accordingly, we hold that the improper admission of Dr. Kalish's undisclosed expert testimony deprived Turner of a fair trial.

### 24–Hour Rule Issues

The Christiana Care Hospital's 24–hour rule directs doctors to dictate operative reports before there is a change in the level of care and preferably within twenty-four hours of surgery. The operative report is intended to contain details about the surgeon's findings and the procedure that was performed. It is more extensive than the surgeon's handwritten postoperative note, and is prepared post-surgery on a preprinted hospital form.

Turner argues that the trial court abused its discretion by granting the defendants' motion *in limine* to exclude testimony regarding the 24–hour rule at Christiana Care Hospital. Turner proffers two arguments in support of her contention that the trial court wrongfully excluded evidence of the 24–hour rule: first, that the trial court erred in concluding that the

---

8. *Barrow v. Abramowicz,* 931 A.2d at 435 & n. 35.

9. *Id.*

10. *Id.* at 432–33 (quoting *Green v. Alfred A.I. duPont Inst. of Nemours Found.,* 759 A.2d 1060, 1063 (Del.2000)).

11. The defendants' harmless error argument is without merit. *See id.* at 435 (holding, without explicitly stating, that a trial judge's failure to limit expert testimony to that elicited at deposition constituted significant prejudice).

24–hour rule was not relevant and admissible as affirmative proof of the defendants' negligence; and alternatively, that the trial court erred in not otherwise admitting evidence of the 24–hour rule for the limited purpose of impeaching Dr. Conway's testimony denying knowledge of the rule.

We have concluded that the trial court did not abuse its discretion in ruling that the evidence of the 24–hour rule was inadmissible as affirmative evidence of the defendants' negligence. We have also concluded, however, that the trial court did not apply the proper analysis before excluding evidence of the 24–hour rule for purposes of impeachment.[12]

### 24–Hour Rule Inadmissible As Affirmative Proof of Negligence

■ Turner contends that the trial court erred in excluding any evidence of the 24–hour rule at Christiana Care Hospital, because the evidence was relevant as to the defendants' negligence and therefore admissible. The record reflects that Dr. Conway made a handwritten operative note on December 2, 2007, the day of Turner's second bowel surgery. Dr. Conway waited until January 23, 2008—a delay of fifty-two days—to complete the operative report.

According to Turner, her attorney should have been able to ask multiple witnesses—defense expert Dr. Kirkland, Dr. Bennett, and Dr. Conway—about the fifty-two day delay, because all three opined about the liability of Dr. Conway and Dr. Kalish based on that report. Turner sought to introduce this evidence at trial as affirmative proof of negligence, and argued that the jury could have inferred from the delay that: first, Dr. Conway did not completely report the details of the surgery; second, Dr. Conway's memory was not as detailed as it would have been in the 24–hour post-surgery period; and third, Dr. Conway may have been attempting to cover-up his own negligence and the negligence of Dr. Kalish by delaying the report.

The defendants filed a motion *in limine* to "Preclude Plaintiff from Asserting Negligence at Trial Based Upon Time in Which Operative Reports Were Dictated." Turner's response conceded that Dr. Conway's failure to dictate the operative report did not, in itself, cause her any physical injury. Instead, Turner argued that Dr. Conway's "undisputed violation of the 24–hour rule coupled with the undisputed fact that he performed at least 27 surgeries in the ensuing 52 days support an argument that he was busy and hurried through Turner's surgery, leading to the spillage of abdominal contents identified by Dr. Bennett which, in turn, necessitated surgery to remove the contaminated mass on Turner's liver."

The trial judge did allow Turner to establish that Dr. Conway's operative report was not dictated until fifty-two days after the surgery. However, the trial judge precluded Turner from asking any witness about how this may affect the defendants' negligence:

> I think in this case the defendants have the better of the argument. I'm very concerned of allowing the witness to, and attorney arguing later, that the timing of the operative report being dictated was evidence of some kind of other negligence in the case when there's no evidence that the lateness of the report caused the subsequent injuries.
>
> I do think that the plaintiff can get into evidence the timing of the report. And I do recognize that there are appar-

12. *See Snowden v. State,* 672 A.2d 1017, 1025 (Del.1996).

ently guidelines in the hospitals that require more prompt preparation of operative reports. But looking at all of it, I think, under Rule 403, the probative value of allowing a witness to testify that the timing of the preparation of the operative report has probative value, but it is substantially outweighed by considerations of prejudice and confusion to the jury.

\* \* \*

I was intending to rule, I think I did, that defendants can't be shown to have improperly or untimely completed the operative reports.

Now, I do think that, without any hospital rules being introduced and anything said about it, the jury is going to have some thoughts about an operative report that was prepared 52 days later. But that's a fact I'll allow it to come into evidence but without comment without it being in violation of the hospital rule for the reasons I said.

\* \* \*

[A]s plaintiffs have said in their original response, there's no claim of causation related to the report, which I think is important, but plaintiff said it was evidence of negligence. But I think the fact that there's no claim of causation warrants the exclusions of the report, and for other reasons, as well.

As I said, the plaintiffs can tell the jury and get into evidence the date of the operative report. I'm not going to exclude that date. The jury can draw its own conclusions about that. But there should be no mention of the so-called 24–hour rule that's been admitted into evidence in connection with this motion because I think, under Rule 403, although that has some probative value, I think, under the circum-

stances, the probative value of that testimony is substantially outweighed by consideration of prejudice and misleading the jury.

Turner argues on appeal that "the application of the 24–hour rule is relevant and relevant evidence is admissible." Under Delaware Rule of Evidence ("DRE") 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This Court has previously acknowledged that "DRE 401 embraces the notion that relevancy consists of both materiality and probative value."[13] Evidence is material if it is "of consequence" in light of the issues or ultimate facts in the case, and the evidence has probative value when it advances the probability that the fact, as the party asserts it, is true.[14]

Turner's argument that the evidence is relevant was acknowledged by the trial judge in his ruling. The trial judge specifically stated that "allowing a witness to testify [about] the timing of the preparation of the operative report has probative value." Nevertheless, all relevant evidence is not necessarily admissible.

The trial court excluded the admittedly relevant evidence pursuant to DRE 403 because the prejudice and confusion that would be caused by its admission outweighed its probative value. DRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." The trial judge excluded the admission of the

---

13. *Getz v. State,* 538 A.2d 726, 731 (Del.1988).  14. *Id.*

24–hour rule as affirmative proof of negligence for the following reasons:

I do think that the plaintiff can get into evidence the timing of the report. And I do recognize that there are apparently guidelines in the hospitals that require more prompt preparation of operative reports. But looking at all of it, I think, under Rule 403, the probative value of allowing a witness to testify that the timing of the preparation of the operative report has probative value, but it is substantially outweighed by consideration of prejudice and confusion to the jury.

&ast; &ast; &ast;

I was intending to rule, I think I did, that defendants can't be shown to have improperly or untimely completed the operative reports.

Now, I do think that, without any hospital rules being introduced and anything said about it, the jury is going to have some thoughts about an operative report that was prepared 52 days later. But that's a fact I'll allow it to come into evidence but without comment without it being in violation of the reasons I said.

&ast; &ast; &ast;

[A]s plaintiffs have said in their original response, there's no claim of causation related to the report, which I think is important, but plaintiff said it was evidence of negligence. But I think the fact that there's no claim of causation warrants the exclusions of the report, and for other reasons, as well.

As I said, the plaintiffs can tell the jury and get into evidence the date of the operative report. I'm not going to exclude that date. The jury can draw its own conclusions about that. But there should be no mention of the so-called 24–hour rule that's been admitted into evidence in connection with this mo-

tion because I think, under Rule 403, although that has some probative value, I think, under the circumstances, the probative value of that testimony is substantially outweighed by consideration of prejudice and misleading the jury.

Turner has conceded that Dr. Conway's failure to timely dictate the operative report did not, in itself, cause her any physical injury. Nevertheless, Turner sought to question three different medical witnesses on how the delay in preparing the operative report *could have* indicated that the surgery itself was performed negligently. The record reflects that the trial judge properly applied the Rule 403 balancing test and did not abuse his discretion by declining to admit evidence of a 24–hour rule violation as affirmative evidence of medical negligence.

### *24–Hour Rule Proper Impeachment*

Turner filed a motion for reargument on May 9, 2012, asserting that evidence of the 24–hour rule was relevant for impeachment purposes. The impetus for this assertion was Dr. Conway's deposition testimony. Turner argues, even if the trial court did not abuse its discretion in excluding evidence of the 24–hour rule to prove the defendants' negligence, the trial court should have admitted the evidence for the limited purpose of impeaching Dr. Conway's testimony. At a minimum, Turner argues, the jury "should have been permitted to know that Dr. Conway denied knowledge of the [24–hour] rule under oath at his deposition."

At Dr. Conway's deposition, he testified that he did not believe that there was any requirement at Christiana Care Hospital to have operative reports completed within any set time period, he was unaware of any rule about dictating operative reports within twenty-four hours of surgery, and it was not uncommon for such reports to be

dictated "down the road." Turner was precluded from impeaching Dr. Conway at trial with any of these statements regarding the 24–hour rule. Turner claims that the trial judge abused its discretion in excluding that line of questioning.

DRE 607 states that "[t]he credibility of a witness may be attacked by any party." DRE 616 further explains that "[f]or the purpose of attacking the credibility of a witness, evidence of bias, prejudice or interest of the witness for or against any party to the case is admissible." Here, Turner sought to impeach Dr. Conway's credibility through cross-examination by introducing his deposition testimony.

Although the decision to permit or deny specific evidence that is to be used for cross-examination is committed to the trial judge's discretion, this Court has stated that a trial judge "may not . . . exercise this discretion so as to defeat a party's right to effective cross-examination."[15] Furthermore, this Court has identified several factors to guide the trial court in the exercise of its discretion:

> [T]he trial judge should consider (1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence to the question of bias; (3) the danger of unfair prejudice, confusion of issues, and undue delay; and (4) whether the evidence of bias is cumulative.[16]

Turner's substantive argument for introducing the 24–hour rule for impeachment purposes came primarily in a motion for reargument, after the trial judge granted the defendants' motion *in limine* to exclude evidence of the 24–hour rule being used affirmatively to prove the defendants' negligence. After stating that the impeachment argument was essentially time-barred, the trial judge addressed the substantive merits, and in ruling stated:

> [I]mpeachment as a reason was barely mentioned by plaintiffs in their original response to the defendant's motion in limine and, as I reviewed the argument on May 2, barely mentioned at oral argument but it is, more or less, the centerpiece of the motion to reargue. So, I think the key argument of impeachment comes too late since it wasn't argued to begin with.

The trial judge also stated that:

> [T]he plaintiffs can tell the jury and get into evidence the date of the operative report. I'm not going to exclude that date. The jury can draw its own conclusions about that. But there should be no mention of the so-called 24–hour rule. . . .
>
> [T]here doesn't seem to be evidence to suggest the report's not credible or unbiased. Dr. Beaton has not offered an opinion that the report is inaccurate. And I think that it's not warranted, under the procedural background of this motion or by the law, to allow it to come in as even evidence of negligence. So, the motion for reargument is denied.

The trial judge's ruling raises several concerns. First, the impeachment issue was presented prior to trial in response to the ruling on the motion *in limine*. Even if the matter was more substantively addressed in a motion for reargument, it was timely, proper matter for pretrial consideration. Second, the ruling suggests that

---

**15.** *Garden v. Sutton*, 683 A.2d 1041, 1043 (Del.1996). There are, of course, exceptions, such as a determination that the evidence is of marginal relevance. *See Weber v. State*, 457 A.2d 674, 682 (Del.1983).

**16.** *Snowden v. State*, 672 A.2d 1017, 1025 (Del.1996).

Turner was attacking only the veracity of the operative report. It appears, however, that Turner was arguing that Dr. Conway was not credible as a witness generally and specifically in preparing the report accurately, because he refused to acknowledge at his deposition that he was aware of a Christiana Care Hospital written rule that required him to prepare an operative report within twenty-four hours of surgery. The record reflects that Turner was going to present Dr. Beaton as a witness to prove that the 24–hour rule was well-established at Christiana Care Hospital, which would have undermined Dr. Conway's deposition testimony and trial credibility. Third, the ruling does not reflect that the trial judge considered the factors this Court identified in *Snowden v. State* for trial courts to consider when limiting cross-examination evidence.[17] In the absence of a ruling that effectively balances those competing factors, we cannot determine whether the trial judge properly exercised his discretion in excluding the evidence of the 24–hour rule for the limited, but important purpose of impeaching Dr. Conway's credibility.

 We have addressed the merits of Turner's arguments relating to the 24–hour rule because this case must be remanded for a new trial. We have concluded that the trial judge properly declined to admit evidence of a 24–hour rule violation as affirmative evidence of medical negligence. Under the specific facts of this case, however, the exclusion of any reference to the 24–hour rule for impeachment purposes does not constitute the law of the case on remand.[18] The parties may again litigate the admissibility of the 24–hour

rule for the purpose of impeaching Dr. Conway's credibility, after a balancing of the factors set forth in *Snowden v. State*.[19]

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for a new trial, in accordance with this opinion.

---

17. *See id.*

18. *Compare Cede & Co. v. Technicolor, Inc.,* 884 A.2d 26, 38 (Del.2005) ("It is well-settled that when an appellate court remands for further proceedings, the trial court must proceed in accordance with the appellate court's mandate as well as the law of the case established on appeal.").

19. *Snowden v. State,* 672 A.2d at 1025.