# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KIMBERLY CULLER, Individually | : | |
| And as Administrator of the | : | C.A. No. K16C-07-013 NEP |
| Estate of NETTIE CULLER, | : | In and For Kent County |
| VERONICA WHITE, and | : | |
| CLARENCE CULLER, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BAYHEALTH MEDICAL CENTER, | : | |
| INC., d/b/a MILFORD MEMORIAL | : | |
| HOSPITAL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Submitted: April 10, 2018
Decided: April 16, 2018

## MEMORANDUM OPINION AND ORDER

Francis J. Murphy, Esquire, and Lauren A. Cirrinicione, Esquire, Murphy & Landon, *for the Plaintiff.*

James E. Drnec, Esquire, Lauren C. McConnell, Esquire, and Katherine J. Sullivan, Esquire, Wharton Levin Ehrmantraut & Klein, P.A, *for the Defendant.*

## I. INTRODUCTION

Before the Court are motions *in limine* filed by Plaintiffs Kimberly Culler, Veronica White, and Clarence Culler (hereinafter "Plaintiffs," collectively), and by Defendant Bayhealth Medical Center, Inc., d/b/a Milford Memorial Hospital (hereinafter "Bayhealth" or "Defendant"). This opinion sets forth the Court's decision on the motions following oral argument on April 10, 2018.

Plaintiffs are suing Bayhealth for damages resulting from the death of Decedent Nettie Culler (hereinafter "Decedent"). The facts of the incident causing Decedent's death, according to Plaintiffs, are as follows:

On July 21, 2014, Decedent was admitted to Milford Memorial Hospital for gastrointestinal bleeding. At the time, Decedent was immobile, and agents of Bayhealth were attempting to move her when they "banged her head against the wall." Shortly thereafter, Decedent reported headaches and seizures. Decedent sustained wounds and infections; was intubated, sedated, and diagnosed with acute respiratory failure due to neurological process; and became dependent upon a tracheostomy to breathe. Decedent died approximately six months later, on January 7, 2015.

As a result of the above, Plaintiffs have advanced survival and wrongful death claims. Defendant denies certain of the above allegations, and denies that an act or omission of Defendant proximately caused injury to Plaintiffs.

Currently before the Court are the following motions *in limine*: (1) Plaintiffs' Motion to Exclude Duplicative Expert Testimony; (2) Defendant's *Daubert* Motion

to Exclude Testimony of Roger Behar, MD.; and (3) Defendant's Motion to Exclude Rebuttal Expert Opinion of Roger Behar, MD.[1]

## II.  DISCUSSION

### A.  Plaintiffs' Motion to Exclude Duplicative Expert Testimony

Plaintiffs' motion contends that Defendant's experts Dr. Goldszmidt, Dr. Lineback, and Dr. Spillers are expected to offer duplicative testimony and that they should be precluded from doing so. Specifically, Dr. Spiller and Dr. Goldszmidt are both expected to testify regarding lack of causation, and Dr. Goldszmidt and Dr. Lineback are both expected to testify about the use of fosphenytoin in Decedent's treatment. Plaintiffs complain that Defendant intends to "bombard the jury with multiple doctors who will testify to the exact same opinions" and that this should be prohibited pursuant to Rule 403, due to the limited probative value of duplicative evidence. Further, Plaintiffs argue that Defendant' presentation of three experts to rebut the opinions of Plaintiffs' lone expert is prejudicial, as it may suggest to the jury that "plaintiffs' expert must be wrong." According to Plaintiffs, failure to grant their motion would permit "Defendant to use its seemingly unlimited resources to deny plaintiffs' meaningful access to the court and a jury trial." Plaintiffs offer no case law in support of this assertion, citing only to case law generally prohibiting duplicative testimony at trial.

---

[1] Plaintiffs had filed a second motion *in limine* to preclude certain testimony of defense witness Georgia Persky, RN, but the parties have indicated to the Court that they have resolved the matter.

In response, Defendant posits that it has no intention of offering duplicative evidence at trial, and that each defense expert is a specialist in a different field, and will offer unique testimony.

In general, expert testimony should be permitted when it "will assist the trier of fact to understand the evidence or to determine a fact in issue."[2] According to the Delaware Supreme Court, "While a trial judge may limit a party's presentation of evidence on the ground that it is cumulative, such authority should be exercised sparingly so as not to deprive a litigant of the right to manage the presentation of her evidence."[3]

The Court gives deference to Defendant's right to elect how to present its evidence—at this stage. At trial this Court will, of course, abide by the Delaware Rules of Evidence and will not permit unnecessary duplicative testimony. However, no authority has been presented to suggest that the Court must force Defendant at this time to choose which of its experts will offer what specific testimony. The Court shall reserve decision on whether any testimony elicited is impermissibly cumulative until trial, and expects that Defendant will comply with the evidentiary rules.[4]

## B.    Defendant's *Daubert* Motion to Exclude Expert Opinion Testimony

In its first motion, Defendant argues that Plaintiffs' expert Dr. Behar's causation opinion is insufficiently reliable. Dr. Behar is expected to testify that Decedent suffered a traumatic brain injury when her head was struck, and that this

---

[2] D.R.E. 702.

[3] *Green v. Alfred A.I. duPont Inst. of Nemours Found.*, 759 A.2d 1060, 1065 (Del. 2000).

[4] Defendant also raised concerns at the pretrial conference, and again at oral argument, that Plaintiffs intend to offer duplicative testimony from multiple witnesses identified as experts in nursing standards of care. The Court indicated at oral argument that the Court expects both parties to comply with the evidentiary rules and will entertain objections to duplicative testimony when and if the need arises at trial.

increased the likelihood of her suffering a seizure. Defendant claims that Dr. Behar relies only upon three scientific articles that causally link traumatic brain injury to seizure disorders. The problem, according to Defendant, is that Decedent did not appear to suffer a brain injury of the severity that these articles show as causally linked to seizure disorders.

In response, Plaintiffs argue that the studies are not the "universal basis for [Dr. Behar's] opinion," but rather "Dr. Behar's analysis and methodology includes a differential diagnosis."

Consistent with *Daubert*, Delaware Courts use the following factors to determine the admissibility of scientific or technical expert testimony: "(1) the witness is qualified as an expert by knowledge, skill, experience, training or education; (2) the evidence is relevant; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury."[5]

However, given the unique context of clinical medicine, rigid application of the above factors is inappropriate, and this Court has previously held that a "'soundly performed' differential diagnosis *alone* satisfies the *Daubert* requirements for reliability in the context of clinical medicine."[6] The Fourth Circuit provides a useful definition of a differential diagnosis: "[d]ifferential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical

---

[5] *Tolson v. State*, 900 A.2d 639, 645 (Del. 2006); *Eskin v. Carden*, 842 A.2d 1222, 1227 (Del. 2004).
[6] *State v. Salasky*, 2013 WL 5487363, at *26 (Del. Super. Sept. 26, 2013); *State v. McMullen*, 900 A.2d 103, 118 (Del. Super. 2006).

problem by eliminating the likely causes until the most probable one is isolated."[7] A proper differential diagnosis typically involves "conduct[ing] a physical examination, tak[ing] a medical history, review[ing] clinical tests, including laboratory tests, and exclud[ing] *obvious* (but not all) alternative causes."[8]

In this case, Dr. Behar did not perform a physical examination, presumably because Decedent died as a result of her injuries in this case. It is not essential for a diagnosing expert to perform a physical examination in every case, particularly when other examination results are available.[9] Dr. Behar did review a variety of medical records, including records of medical history, multiple physical examinations, and clinical and laboratory tests, as indicated in Dr. Behar's witness disclosure. Regarding ruling out other possible causes, the record reflects that Dr. Behar's diagnosis addresses the possibility that the seizure could have occurred naturally, but that Decedent's traumatic brain injury increased the likelihood of such a seizure. Additionally, Dr. Behar noted that all other potential causes were ruled out by Decedent's workup. The record does not reflect any other possibilities that Dr. Behar failed to address. The Court is satisfied that Dr. Behar performed a sound differential diagnosis. Therefore, the Court considers his conclusions reliable. Having thus found, the Court need not address the other bases for Dr. Behar's opinions.[10]

---

[7] *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999).

[8] *McMullen*, 900 A.2d at 117.

[9] *Id.*; *see also Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 807 (3d Cir. 1997).

[10] In responding to Defendant's motion, Plaintiffs argued that they are entitled to a spoliation instruction and accompanying negative inference due to the alleged failure of the Defendant's employees to report or document the incident in question. The Court sees no warrant for such an instruction at this stage. *See Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 548 (Del. 2006) (prior to issuing missing evidence adverse inference instruction, court must find that party acted willfully or recklessly in failing to preserve evidence). The Court will entertain a request for such an instruction at the prayer conference should evidence of intentional or reckless suppression of evidence be submitted at trial.

## C. Defendant's Motion to Exclude Rebuttal Expert Opinions

In its second motion, Defendant objects to a specific rebuttal disclosure opinion of Dr. Behar, in which it is disclosed that "Dr. Behar will testify that although medical studies are often limited to a specific population of study participants, once completed, those studies are extrapolated and applied more broadly to the general population of patients with similar conditions." Defendant argues that this is an improper "attempt to expand on and rehabilitate Dr. Behar's deposition testimony."

Defendant alludes to Dr. Behar's cross-examination testimony made when defense counsel attempted to impeach Dr. Behar by arguing that certain medical literature he relied upon did not directly support his causation theory in this case. Dr. Behar's expected causation testimony is that the striking of Decedent's head against the headboard proximately caused a mild traumatic brain injury and increased the likelihood that she would suffer seizures, like those which preceded her death. However, as indicated previously, when cross-examined by defense counsel, Dr. Behar agreed that the medical literature he cited in support of his theory defined a traumatic brain injury of the type that is associated with seizures, as exhibiting symptoms more severe than the mild brain injury symptoms documented in Decedent's case.

Defendant has presented no applicable case law to suggest that Dr. Behar's proposed rebuttal testimony should be excluded at this time. Defendant chiefly relies on *Bush v. HMO of Delaware, Inc.*,[11] the holding of which is inapplicable here, as it concerns the exclusion of rebuttal expert testimony when the witness was not identified as an expert before trial and Defendant was not provided with the

---

[11] 702 A.2d 921 (Del. 1997).

substance and grounds of the expert opinion beforehand.[12] The case does not hold, as Defendant suggests, that rebuttal testimony may not stray beyond what was elicited at a pretrial deposition.

Delaware courts have held that the Court may permit rebuttal evidence that strengthens a party's case in chief.[13] When faced with similar facts, this Court has previously elected to reserve decision on the scope of rebuttal testimony that will be permitted until the completion of the defense's case.[14] The Court has received no authority to indicate that the rebuttal disclosure was improper, and the Court shall reserve decision on the scope of rebuttal testimony it will allow until the appropriate phase of the trial.

**WHEREFORE**, for the foregoing reasons, the Court rules on the motions *in limine* as follows:

(1) Plaintiffs' Motion to Exclude Duplicative Expert Testimony is **DENIED**;

(2) Defendant's Daubert Motion to Exclude Testimony of Roger Behar, MD is **DENIED**; and

(3) Defendant's Motion to Exclude Rebuttal Expert Opinion of Roger Behar, MD is **DENIED**.

---

[12] *Id.* at 923.

[13] *See Herhal v. State*, 283 A.2d 482, 485 (Del. 1971) ("it is entirely proper for the affirmative side to give evidence in rebuttal in reply to the evidence of the other side of the case. And we further held that if as an incidental this rebuttal evidence tends to corroborate and strengthen the case in chief, that of itself is not error. *The matter is always to be left to the discretion of the trial court.*") (emphasis added); *In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 3207155 at *1 (Del. Ch. July 28, 2017) ("The fact that rebuttal evidence also tends to corroborate the party's affirmative case does not require its exclusion.").

[14] *Hercules Inc. v. OneBeacon Ins. Am.*, 2004 WL 3250119 at*1 (Del. Super. Sept. 7, 2004).

## IT IS SO ORDERED.

<u>/s/ **Noel Eason Primos**</u>

Judge

NEP/wjs
*Via File&ServeXpress*
oc.    Prothonotary
cc.    Counsel of Record