Kathleen Marie BARROW, individually and as the Personal Representative of the Estate of Robert J. Barrow, James Gregory Barrow, Jennifer Kathleen Barrow, Christine Marie Barrow and Nicole Elizabeth Kazenske, Plaintiffs Below, Appellants,

v.

Carl ABRAMOWICZ, M.D. and Southern Delaware Imaging Associates, LLC, Defendants Below, Appellees.

No. 486, 2006.

Supreme Court of Delaware.

Submitted: May 9, 2007.

Decided: Aug. 7, 2007.

Richard A. Zappa, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for appellants.

Dennis D. Ferri (argued) and Amy A. Quinlan, Morris James LLP, Wilmington, Delaware, for appellees.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice.

Plaintiff-appellant, Kathleen Barrow, individually and as the personal representative of the estate of Robert J. Barrow et al., appeals a Superior Court jury verdict in which the jury found Defendant-appellee, Carl Abramowicz, M.D., negligent in his care of Barrow, but not liable for Barrow's death because his negligence was not a proximate cause of harm to Barrow.

The Barrows focus their arguments on two errors the trial judge allegedly made. They claim that the trial judge erred when he did not permit the testimony of Dr. Abramowicz' medical expert that was favorable to the Barrows and erred again when he permitted Dr. Abramowicz to opine on issues of causation without providing proper notice to the Barrows. Because we agree with the Barrows that the trial judge erred in these two respects, we reverse and remand this case to the Superior Court for a new trial.

## FACTS AND PROCEDURAL HISTORY

On November 19, 2001, Dr. Abramowicz viewed x-rays of Robert Barrow's chest. Doctors diagnosed Barrows with lung cancer in April 2002. Metastatic lung cancer caused his death on January 4, 2003. The Barrows allege that Dr. Abramowicz negligently interpreted and reported Barrow's November 19, 2001 chest x-rays and that his failure to detect and report discoverable cancer at that early stage in 2001 resulted in a curable lung cancer metastasizing and becoming an end stage, incurable cancer by the time of its diagnosis in 2002. Specifically, the Barrows contend that Dr. Abramowicz (i) failed to report that abnormalities in the upper left lobe of Barrow's left lung could be cancer; and, (ii) failed to recommend a follow up chest CT scan which would have led to the diagnosis of lung cancer while it was confined to the left upper lobe in 2001.

From the outset of the case, Dr. Abramowicz has denied that he misread Barrow's November 19, 2001 chest x-ray. Dr. Abramowicz also contends that Barrow's lung cancer was at an advanced stage on November 19, 2001, and that, because of the cancer's rapid growth, treatment would not have made a difference. Dr. Abramowicz maintains, arguably inconsistently, that no discernable cancer could be detected in the left upper lobe of his lung as of November 19, 2001.

In accordance with deadlines established by the trial scheduling order, the Barrows identified their trial experts. They identified two radiologists, Dr. Konerding and Dr. Magid, to testify on standard of care issues and two cancer specialists, Dr. DeNittis and Dr. Martin, both oncologists, to testify on causation issues. Dr. Abramowicz, after receiving a deadline extension, identified two oncologists, Dr. Krasnow and Dr. Creech, whose opinions were limited to causation issues. Dr. Abramowicz did not disclose any standard of care experts. Moreover, in response to Rule 26(e) expert witness interrogatories, Dr. Abramowicz did not list himself, or any other radiologist, as an expert who would be offering expert opinion testimony on any issue at trial.

The parties deposed pretrial all of the designated expert witnesses. For the Barrows, both Dr. Konerding and Dr. Magid opined that Dr. Abramowicz violated the applicable standard of care and that those violations caused a material delay in the diagnosis of Barrow's lung cancer. They also testified that the abnormalities shown in the November 19, 2001 chest x-rays were consistent with the presence of lung cancer and that Dr. Abramowicz should have identified the abnormalities as a potential malignancy and recommended that a chest CT scan be performed to

further evaluate the abnormalities in order to facilitate a definitive diagnosis.

On medical causation issues, both Dr. DeNittis and Dr. Martin testified that the failure to recognize and report the abnormalities in November of 2001, caused a delay in the diagnosis and treatment of Barrow's lung cancer, which resulted in no treatment plan for lung cancer, and allowed the cancer to advance and metastasize from its primary site in the left upper lobe. As a result, by the summer of 2002 when the cancer was eventually diagnosed, it had become incurable. These oncology experts also opined that the radiographic abnormalities on Barrow's November 19, 2001 chest x-rays and July 22, 2002 chest CT scans were cancerous, and that the primary site of Barrow's lung cancer was in the left upper lobe.

For Dr. Abramowicz, Dr. Krasnow opined in a written report, and again at his pretrial deposition, that Barrow's primary lesion was located in the left upper lobe of his left lung and that the abnormalities on the November 19, 2001 chest x-ray were cancerous to a "reasonable medical certainty." Dr. Krasnow further testified that the cancer in that location already had metastasized by November of 2001. In his pretrial deposition, Dr. Creech contested the malignant nature of Barrow's abnormalities and the location of the primary site of his lung cancer. He also testified that (i) he could not locate the primary tumor; and, (ii) that the tumor was not in the left upper lobe because the radiographic abnormalities in the left upper lobe were benign.

The Barrows moved to strike that portion of Dr. Krasnow's opinion that related to whether Barrow's lung cancer had metastasized by November 2001, as "unreliable." The trial judge agreed, while emphasizing that his ruling did not affect Dr. Krasnow's other proffered medical opinions, including his opinion that the location of Barrow's primary lung tumor was in the left upper lobe.

The trial judge entered the final pretrial order signed by all parties that identified all of the parties' expert witnesses on February 1, 2006. The Barrows designated as experts the doctors they previously had disclosed pursuant to the pretrial scheduling order. The Barrows expressly reserved the right to call Dr. Abramowicz's experts, including Dr. Krasnow, without objection from Dr. Abramowicz. Dr. Abramowicz similarly reserved the right to call the Barrows' designated expert witnesses. The Barrows also expressly reserved the right to introduce the pretrial discovery deposition of witnesses who could not attend the trial. Although Dr. Abramowicz objected to other matters affecting the trial, he did not object to the Barrows introducing the pretrial discovery depositions of witnesses that would be unavailable at trial.[1]

The trial was scheduled to begin on February 6, 2006. A few days before trial, Dr. Abramowicz's counsel requested a continuance because of illness. The trial judge granted the continuance and rescheduled the trial to begin August 21, 2006, and later ruled that the parties were to remain in the same position at the rescheduled trial as they would have been had the case proceeded to trial as originally scheduled.

---

1. Whether or not the Barrows properly identified their intent to use Dr. Krasnow's discovery testimony at trial is an issue on appeal. Dr. Abramowicz argues that the general language on which the Barrows rely could not have provided sufficient notice to Dr. Abramowicz of their intent to use Dr. Krasnow's discovery testimony given their attempt to exclude a portion of his pretrial deposition testimony.

Shortly before trial, Dr. Abramowicz's counsel informed the Barrows that he would not be calling Dr. Krasnow as a trial witness. The Barrows then identified relevant portions of Dr. Krasnow's pretrial discovery deposition testimony that they intended to introduce at trial. The proffered testimony related to Dr. Krasnow's opinions that the location of Barrow's primary lung tumor was in the left upper lobe and the radiographic abnormalities on the November 19, 2001 chest x-rays were cancerous. Dr. Abramowicz objected.

The Barrows argued to the trial judge that the pretrial order had properly identified Dr. Krasnow as an expert witness that the Barrows could call in the case-in-chief or in rebuttal on an issue that went to the heart of the Barrows' claims. The Barrows contended that they had properly reserved the right to introduce the deposition testimony of Dr. Krasnow in the pretrial order and Dr. Abramowicz had not objected. Moreover, they asserted, the deposition testimony was admissible pursuant to Superior Court Civil Rule 32. Finally, the Barrows argued that our opinion in *Green v. Alfred A.I. duPont Institute of the Nemours Foundation*[2] was per-

suasive, if not controlling, authority for their position.

With the trial underway, the trial judge ruled that the Barrows would not be permitted to introduce Dr. Krasnow's pretrial deposition testimony.[3] The judge distinguished *Green* on the basis that the *Green* court admitted the expert's deposition testimony because it was designated as a trial deposition, as opposed to a pretrial discovery deposition, as was the case here. The trial judge also alluded to a "general bar against parties calling opposing standard of care experts" in Delaware.[4]

The trial judge also permitted Dr. Abramowicz to give a causation opinion by testifying at trial that Barrow's radiographic abnormalities in the left upper lobe were benign and that there was no cancer in the left upper lobe of his lung. The trial judge permitted this testimony over the Barrows' objections made shortly before the start of trial and again at trial during Dr. Abramowicz's direct examination. The Barrows objected to the testimony because Dr. Abramowicz had not properly disclosed his medical causation opinion before trial and because the opinions he gave at trial contradicted those he had given under oath at his pretrial deposition.[5]

---

**2.** 759 A.2d 1060 (Del.2000).

**3.** The trial judge ordered:

"In this case, the proposed deposition of Krasnow was not a trial deposition, it was a discovery deposition, and, in fact, although I believe one party was present, I'm not sure how many questions the defense actually asked in that deposition. So I think the whole posture was quite different. And, more importantly, I have eliminated or had some problems with Dr. Krasnow's testimony. So because of those factors, I am not going to allow the plaintiff to use part of the discovery deposition."

*Barrow v. Abramowicz*, Del.Super., Civ. A. No. 04C–01–151, Scott, J. (Aug. 21, 2006).

**4.** *Id.*

**5.** Dr. Abramowicz stated the following, under oath, at his pretrial deposition:

Q: Are we in agreement that in looking at the CAT scan [July 22, 2002], that that abnormality is in the same area which you circumscribed by markings on the chest x-rays done in November of 2001?
A: Yes.

\* \* \* \* \* \*

Q: What I'm trying to get a good fix on, though, is the parameters of that area [on the July 22, 2002 CT scan] that you felt was the mass. Can you with the red marker circle of fill in the area where the mass is located ... [witness complied] ... That is the lung cancer, in your opinion?
A: Suspicious. That's how I said it in my report [on the July 22, 2002 CT scan].
Q: Looked to you like lung cancer?

After Dr. Abramowicz testified, Dr. Creech testified that there was no cancer in the left upper lobe of Barrow's lung and that the radiographic abnormalities shown on his diagnostic studies in the left upper lobe were benign. In closing, Dr. Abramowicz's counsel argued that the abnormalities in Barrow's upper left lobe were not cancerous and, therefore, any negligence on Dr. Abramowicz's part could not have been the proximate cause of harm to Barrow because no cancer originating from the upper left lobe would have been diagnosed in 2002, even if further studies had been conducted in 2001.

The jury, responding to special interrogatories, found Dr. Abramowicz negligent, but concluded his negligence did not proximately cause harm to Barrow.

On September 8, 2006, the Barrows appealed, arguing that the trial judge erred when he precluded them from introducing relevant portions of Dr. Krasnow's pretrial deposition testimony on medical causation, and again when he permitted Dr. Abramowicz to opine on medical causation at trial that he had not properly disclosed and that were inconsistent with opinions he expressed in his pretrial deposition.

A: He has a diagnosis of nonsmall cell carcinoma. That's the most suspicious area.

Q: So in putting two and two together based on other testing that was done, that's where you could identify the presence of the lung cancer?

A: Most probable.

At trial, Dr. Abramowicz testified, as follows:

Q: Based upon what you have reviewed in this case, taking everything into consideration, do you believe that there was any cancer in the left upper lobe of Mr. Barrow?

A: I think the medical evidence is overwhelming in this case that this is a scar. On x-ray, the lesion has decreased in size. On four CT scans, if you compare the first with the last, there's no change in size. The shape of the lesion is much more linear

## DISCUSSION

### I. The trial judge's decision to bar pretrial discovery deposition testimony

The Barrows allege that the trial judge erred when he ruled that they could not introduce Dr. Krasnow's pretrial deposition testimony on causation—an issue that went to the very heart of their case. "When the excluded evidence goes to 'the very heart' of plaintiffs' case and 'might well have affected the outcome' of the trial, the exclusion of the evidence warrants a new trial." [6] We review a trial judge's evidentiary rulings for abuse of discretion.[7] If we find the trial judge abused his discretion, we must then determine whether the mistake "constituted 'significant prejudice so as to have denied the appellant a fair trial.' " [8]

Here, Dr. Krasnow's medical opinion on the location of Barrow's primary tumor focused on the most important disputed causation issue in the case. In order to determine causation, the jury needed to decide whether the radiographic abnormalities in Barrow's left upper lobe were benign. If they were, the follow up diagnostic testing required by the standard of

than it is round. Usually cancers are almost always round which also is very suggestive that this is more likely to be a scar. The PET is completely negative in this area. It shows no cancer at all. The patient had surgery, had two bronchoscopies, and had a thoracotomy where the surgeon went looking for this lesion and this lesion, I believe, would have been easy to find if it was a cancer.

6. *Green*, 759 A.2d at 1063 quoting *Watts v. Delaware Coach Co.*, 58 A.2d 689, 696 (Del.Super.1948).

7. *Id.* at 1063.

8. *Id.* (quoting *Eustice v. Rupert*, 460 A.2d 507, 510 (Del.Super.1983)).

care, which included the surgical removal of the abnormal tissue in the left upper lobe, would not have revealed Barrow's cancer. Any negligence on Dr. Abramowicz's part, therefore, could not have proximately caused Barrow's death.

Dr. Krasnow's opinion was relevant, highly probative evidence that contradicted the testimony of Dr. Abramowicz's expert, Dr. Creech. Indeed, the jury's finding of negligence but no proximate cause strongly suggests that the exclusion of this evidence had a bearing on the trial's outcome. As a result, we find that Dr. Krasnow's pretrial deposition testimony on causation issues went to "the very heart" of the Barrows' case.

■ Dr. Abramowicz argues, and we agree, that Dr. Krasnow's causation testimony echoed the opinions of the Barrows' other medical experts, Dr. Konerding, Dr. DeNittis, and Dr. Martin, and, thus, was cumulative. But, the fact that evidence may be cumulative does not render it inadmissible. The Barrows cite to *Green's* proposition that a trial judge should only sparingly limit a party's presentation of evidence on the ground that it is cumulative.[9] Indeed, *Green* dictates that the exclusion of important evidence "warrants a new trial, even if there was other evidence 'of the same general character' or 'the rejected evidence was cumulative.' "[10]

■ Furthermore, it is clear to us that a medical opinion favorable to the Barrows' case from the lips of one of Dr. Abramowicz's experts is potentially more persuasive to a jury than the testimony of an additional plaintiff's expert. Underlying our ruling in *Green* is the principle that a litigant has the right to introduce all relevant evidence, even if generated by an adverse party, which goes to "the very heart" of a case and could affect the outcome of the trial.[11]

■ We next consider whether the Barrows properly reserved their right to introduce Dr. Krasnow's pretrial deposition testimony at trial. The Barrows posit that, on February 1, 2006, Dr. Abramowicz's counsel signed, and the trial judge approved, a pretrial order in which the Barrows expressly reserved the right to call Dr. Abramowicz's witnesses, including Dr. Krasnow.[12] "Under Superior Court Civil Rule 16, the trial judge enters a trial scheduling order which governs pretrial conferences, scheduling, and trial management."[13] Rule 16 "mandates that parties follow the trial judge's scheduling order," thus assuring that the parties conduct predictable discovery.[14] "Parties must be mindful that scheduling orders are not merely guidelines but have full force and effect as any other order of the [Superior] Court."[15] The Barrows claim that the trial judge disregarded the agreed upon

---

**9.** "While a trial judge may limit a party's presentation of evidence on the ground that it is cumulative, such authority should be exercised sparingly so as not to deprive a litigant of the right to manage the presentation of her evidence." *Id.* at 1065.

**10.** *Id.* at 1063 (quoting *Watts v. Delaware Coach Co.*, 58 A.2d 689, 696 (Del.Super.1948) ("When the excluded evidence goes to 'the very heart' of the plaintiffs' case and 'might well have affected the outcome' of the trial, the exclusion of the evidence warrants a new trial, even if there was other evidence 'of the

same general character' or 'the rejected evidence was cumulative.' ")).

**11.** *Id.* at 428–29.

**12.** *Barrow,* Del.Super., Civ. A. No. 04C–01–151.

**13.** *Sammons v. Doctors for Emergency Services, P.A.,* 913 A.2d 519, 530–33 (2006).

**14.** *Id.*

**15.** *Id.*

terms of the pretrial order, and, thus, abused his discretion when he prohibited them from introducing Dr. Krasnow's pretrial deposition testimony.

The Barrows allege that *Green v. A.I. duPont* controls.[16] In *Green*, we found that the trial judge abused his discretion when he precluded the plaintiff, who properly reserved her right in the pretrial order, from introducing relevant portions of the trial deposition testimony of a defense expert who the defendants decided not to call as a trial witness. Attempting to distinguish *Green*, Dr. Abramowicz argues that the witness testimony at issue in *Green* was *trial* deposition testimony, as opposed to the *pretrial* discovery deposition testimony, and points to how this distinction affected the parties' expectations regarding the depositions' use at trial. Arguing that the parties in *Green* anticipated the use of the expert's deposition, and here, did not, Dr. Abramowicz cites to the *Green* court's reasoning that the pretrial order reflected "an understanding, shared by the parties as well as the expert, that the deposition was to be shown to a jury who would give it the same weight as live testimony." [17]

Dr. Abramowicz also cites to *Hambleton v. Christina Care Health Services, Inc.*,[18] a Superior Court case with similar facts that diverged from *Green's* precedent. Distinguishing *Hambleton's* facts from those of *Green*, the *Hambleton* court focused on the designated purpose of the deposition at the time it was taken and whether the parties had sufficient notice of the parties' intent to use the content at trial. The *Hambleton* court concluded that the deposition was a "discovery deposition and neither party intended or contemplated when taking it that it would be used at trial." [19] Indeed, the trial judge here relied on *Hambleton's* distinction between a trial deposition and a discovery deposition when he prohibited the Barrows from using Dr. Krasnow's pretrial deposition testimony.[20] Dr. Abramowicz here touts that the parties did not agree to use the discovery deposition at trial, did not notice it as a deposition for "use at trial" and, therefore, created no expectation it would be used at trial.

We agree with the Barrows that *Green* controls and find the distinction between a trial deposition and a discovery deposition superfluous on the facts here. While Dr. Abramowicz's argument makes practical sense in the abstract, given that the pretrial order is tantamount to a contract between the parties for conducting pretrial preparation, we find that rationale inapplicable here.[21] Dr. Abramowicz clearly intended to use Dr. Krasnow's pretrial deposition testimony at trial and had notice of the Barrows' intention to do the same. On February 1, 2006, Dr. Abramowicz's counsel signed, and the trial judge approved, a pretrial order in which he expressly reserved the right to call Dr. Krasnow and specifically identified "[d]eposition and in-

---

16. *Green*, 759 A.2d 1060.

17. *Id.* at 1065.

18. 2002 WL 183851 (Del.Super.Jan.31, 2002).

19. *Hambleton* at 4–5.

20. The trial judge reasoned as follows:
 In this case, the proposed deposition of Krasnow was not a trial deposition, it was a discovery deposition, and, in fact, although I believe one party was present, I'm not sure how many questions the defense actually asked in that deposition. So I think the whole posture was quite different. And, more importantly, I have eliminated or had some problems with Dr. Krasnow's testimony. So because of those factors, I am not going to allow the plaintiff to use part of the discovery deposition.
 *Barrow*, Del.Super., Civ. A. No. 04C–01–151.

21. *Sammons*, 913 A.2d at 530–33.

terrogatory answers" as exhibits he intended to use at trial.[22] The Barrows similarly expressed their intent to use the same material and witnesses when they "reserve[d] the right to introduce any exhibit identified by the defendants" which, by Dr. Abramowicz's own denotation, included Dr. Krasnow's pretrial deposition testimony. While he objected to other evidence proffered, Dr. Abramowicz did not object to the Barrows' proposal to introduce the witness' pretrial deposition testimony and he also reserved the right to call the Barrows' trial witnesses. Indeed, it appears to be common practice for parties to designate each other's witnesses for use at trial and inconceivable that Dr. Abramowicz would think that the Barrows would not affirmatively elicit opinions from Dr. Krasnow on favorable matters, particularly on the important issue of causation.

Moreover, the Barrows informed Dr. Abramowicz that they intended to introduce portions of Dr. Krasnow's testimony at trial promptly after Dr. Abramowicz confirmed that he no longer intended to call Dr. Krasnow. Similarly, those portions of Dr. Krasnow's deposition testimony were part of the very causation opinion upon which Dr. Abramowicz designated Dr. Krasnow to opine.

Thus, we conclude that the pretrial order and the Barrows' later indication that they intended to introduce pretrial discovery deposition testimony of witnesses at trial gave Dr. Abramowicz full and fair notice of their intentions. The Barrows had a right to rely on the pretrial order to govern the course of trial, unless "modified . . . to prevent manifest injustice." [23] The trial judge never modified the pretrial order. Therefore, we hold that the trial judge erred when he chose not to give effect to the pretrial order of February 1, 2006, thereby preventing the Barrows from presenting important evidence that went to the "very heart" of their case at trial. Dr. Abramowicz "cannot now be heard to complain about living with the record [he] had a hand in creating." [24]

Dr. Krasnow's opinion was relevant, highly probative evidence that went to "the very heart" of the Barrows' case, and all parties had reason to believe and were on notice that the pretrial depositions of expert witnesses may be introduced at trial. For those reasons we hold that the trial judge erred when he prevented the jury from considering Dr. Krasnow's opinion testimony in order to resolve an issue central to the trial's outcome.[25]

## II. The trial judge's admission of unnoticed defendant witness expert testimony

■ Next, the Barrows allege that the trial judge erred when he failed to limit the scope of Dr. Abramowicz' trial testimony to opinions disclosed at his pretrial deposition. We review a trial judge's evidentiary rulings for abuse of discretion.[26] If we find the trial judge abused his discretion, we must then determine whether the mistakes "constituted 'significant prej-

---

22. *Barrow,* Civ. A. No. 04C–01–151.

23. Del.Super. Ct. Civ. R. 16(e): a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order . . . to prevent manifest injustice."

24. *Vandenbraak v. Alfieri,* 2005 WL 1242158, at *5, 2005 U.S. Dist. LEXIS 9882 at *17 (D.Del. May 25, 2005).

25. We note that Dr. Krasnow's testimony also rebutted Dr. Creech's opinions.

26. *Sammons,* 913 A.2d at 535; *Green,* 759 A.2d at 1063.

udice so as to have denied the appellant a fair trial.' " [27]

Over the Barrows' timely objections, the trial judge permitted Dr. Abramowicz to testify that Barrow's radiographic abnormalities were benign, that there was no cancer in the left upper lobe of his lung, and that, therefore, a failure to report a negative finding could not have contributed to the patient's death from incurable cancer. The Barrows claim the trial judge abused his discretion by permitting this testimony because (i) Dr. Abramowicz was never identified as an expert who would be giving causation opinions at trial; and, (ii), Dr. Abramowicz's trial testimony on causation contradicted his pretrial testimony. The Barrows argue that Dr. Abramowicz's testimony went beyond mere factual observations and included an opinion on cause of death. The Barrows further contend that the trial judge's ruling that permitted this testimony rendered the expert witness disclosure requirements of Superior Court Civil Rules 16(e) and 26(e) meaningless.[28] Specifically, they contend that Dr. Abramowicz's failure to identify himself pretrial as an expert who would opine on causation at trial, and to disclose the substance of his causation opinions when identifying his experts for use at trial did not comply with the Rule 16(e) trial scheduling order. Moreover, they argue, he failed to comply with Rule 26(e) [29] by not identifying himself as a trial expert and disclosing his opinions in response to expert witness interrogatories.

In *Rogers v. Case*,[30] the authority upon which the trial judge relied when he allowed Dr. Abramowicz' testimony, the trial judge allowed a defendant doctor in a medical malpractice case to give un-noticed expert testimony. The *Rogers* court reasoned that the distinction between a defendant doctor's role as a fact witness and an expert witness is blurred in medical malpractice cases:

It seems to me that any Defendant in a malpractice case is going to give mixed testimony involving medical opinion and factual recitation. The Plaintiff's testimony is customarily stronger at trial than at deposition, and something qualitatively different is inevitably raised which calls for rebuttal. The Defendant physician must have a fair opportunity to defend himself. Of all the physicians, the Defendant is usually the one most familiar with the facts and diagnosis in the case and his opinion is inevitably admitted in some form. In this case, the Plaintiff was certainly not surprised that the defense would counter the testimony connected with the X-rays.[31]

While we understand the trial judge's reasoning, we cannot overlook the requirement that a defendant doctor wishing to so testify must give notice to an opposing party to give that party a fair opportunity to meet that "expert" opinion on the same basis as any other expert opinion from a nonparty witness.

 *Bush v. HMO of Delaware* requires that a party comply with discovery

---

27. *Green*, 759 A.2d at 1063 (quoting *Eustice v. Rupert*, 460 A.2d 507, 510 (Del.Super.1983)).

28. Del.Super. Ct. Civ. R. 16(e); Del.Super. Ct. Civ. R. 26(e).

29. Rule 26(e) states that "[a] party is under a duty seasonably to supplement the response with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial ... the subject matter on which the person is expected to testify, and the substance of the person's testimony."

30. 1998 WL 437145 (Del.Super. June 30, 1998).

31. *Id.*

directed to the identification of experts and the disclosure of the "substance of their expected opinions" as a precondition for admitting that expert testimony at trial.[32] When a healthcare defendant takes the stand as an expert witness for trial, he must satisfy the same requirements as any other expert witness. These requirements include: (i) a timely identification of his role as an expert; and, (ii), a timely disclosure of his opinions and the bases for his opinions. Without this notice, the other party cannot properly prepare for trial.

Dr. Abramowicz claims that the Barrows should not have been surprised that he expressed the causation opinion he expressed, given his deposition testimony, as well as Dr. Creech's testimony to the same effect at his deposition and at trial. Moreover, he asserts, the issue of whether there was incurable cancer in the upper lobe was in the case from the beginning and was addressed to some degree by all four of the Barrows' experts.

Although that position is factually unassailable, Dr. Abramowicz failed to disclose that he himself would be offering opinion testimony that there was no cancer in Barrow's left upper lobe but that, if there were, a failure to so report could not have produced a timely, life saving diagnosis and treatment plan. Therefore, he should not have been permitted to give that opinion at trial.[33] The trial judge abused his discretion by permitting Dr. Abramowicz' testimony because the defense never identified Abramowicz as an expert who would be giving causation opinions at trial. "Parties must comply with the discovery rules by identifying expert witnesses and disclosing the substance of their expected

opinions as a precondition to the admissibility of expert testimony at trial."[34]

The significance of Dr. Abramowicz's noncompliance is enhanced because his pretrial testimony on the underlying causation issue contradicted his trial testimony. At his pretrial deposition Dr. Abramowicz stated the following, under oath:

Q: Are we in agreement that in looking at the CAT scan [July 22, 2002], that that abnormality is in the same area which you circumscribed by markings on the chest x-rays done in November of 2001?

A: Yes.

\* \* \*

Q: What I'm trying to get a good fix on, though, is the parameters of that area [on the July 22, 2002 CT scan] that you felt was the mass. Can you with the red marker circle of fill in the area where the mass is located ... [witness complied] ... That is the lung cancer, in your opinion?

A: Suspicious. That's how I said it in my report [on the July 22, 2002 CT scan].

Q: Looked to you like lung cancer?

A: He has a diagnosis of nonsmall cell carcinoma. That's the most suspicious area.

Q: So in putting two and two together based on other testing that was done, that's where you could identify the presence of the lung cancer?

A: Most probable.

---

32. *Bush v. HMO of Delaware,* 702 A.2d 921, 923 (Del.1997).

33. Indeed, Dr. Abramowicz' Answering Brief on appeal conceded that "... Dr. Abramowicz ... testif[ied] regarding the standard of care *and causation."* Appellee's Ans. Br. at 29 (emphasis added).

34. *Sammons,* 913 A.2d at 530–33.

At trial, Dr. Abramowicz gave contradictory testimony, as follows:

Q: Based upon what you have reviewed in this case, taking everything into consideration, do you believe that there was any cancer in the left upper lobe of Mr. Barrow?

A: I think the medical evidence is overwhelming in this case that this is a scar. On x-ray, the lesion has decreased in size. On four CT scans, if you compare the first with the last, there's no change in size. The shape of the lesion is much more linear than it is round. Usually cancers are almost always round which also is very suggestive that this is more likely to be a scar. The PET is completely negative in this area. It shows no cancer at all. The patient had surgery, had two bronchoscopies, and had a thoracotomy where the surgeon went looking for this lesion and this lesion, I believe, would have been easy to find if it was a cancer.

Dr. Abramowicz's trial testimony should have been limited to relevant factual matters and opinions disclosed at his pretrial deposition. Because the Barrows had no notice that Dr. Abramowicz—a radiologist, not an oncologist—would offer a causation opinion at trial contrary to his pretrial deposition testimony, their experts were no longer available to rebut Dr. Abramowicz's new testimony at trial.

 Here, the preconditions of *Bush v. HMO of Delaware* were not satisfied. The trial judge's ruling permitting Dr. Abramowicz to opine that if Barrow had cancer in his left upper lobe that it would have been incurable in November 2001, was highly prejudicial and denied the Barrows a fair trial. Indeed, the trial judge's ruling

rendered the mandatory expert witness disclosure requirement of Superior Court Rules 16(e) and 26(e) meaningless.[35]

Moreover, the trial judge's ruling whipsawed the Barrows by allowing Dr. Abramowicz' opinion testimony on causation after having made a ruling that prohibited the Barrows from introducing Dr. Krasnow's opinions on causation. In effect, Dr. Abramowicz was given an extra expert opinion (his own) to support Dr. Creech's causation opinions and the Barrows were denied an expert opinion (Dr. Krasnow's) which would have directly rebutted both Dr. Abramowicz and Dr. Creech's opinions.

### CONCLUSION

Dr. Krasnow's opinion was relevant, highly probative evidence that went to "the very heart" of the Barrows' case, and all parties had reason to believe and were on notice that the pretrial depositions of expert witnesses may be introduced by either at trial. Therefore, the trial judge erred when he prevented the jury from considering Dr. Krasnow's opinion testimony in order to resolve an issue central to the trial's outcome. The trial judge also erred when he failed to limit the scope of Dr. Abramowicz' trial testimony to the observed facts related to standard of care that he disclosed at his pretrial deposition. Accordingly, we REVERSE and REMAND the case to the Superior Court for a new trial.

---

**35.** The ruling also contradicted two previous rulings which were entered to prevent a party from introducing. expert testimony at trial which had not been properly disclosed.