# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TIFFANY R. LEWIS, Individually and
as The Parent and Guardian of TYRA
CURTIS, a minor,

          Plaintiffs,

      v.

DIANE McCRACKEN, M.D. and
ALL ABOUT WOMEN OF
CHRISTIANA CARE, INC.

          Defendants.

)
)
)
)
)
)  C.A. No. N13C-10-175 RRC
)
)
)
)
)
)
)
)
)

Submitted: February 19, 2018
Decided: May 10, 2018

On Defendants' Motion in Limine to Limit the
Testimony of Scott Kozin, M.D. **GRANTED.**

# ORDER

Ben T. Castle, Esquire and Bruce L. Hudson, Esquire, Hudson & Castle Law, LLC, Wilmington, Delaware, Attorneys for Plaintiffs.

Gregory S. McKee, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware, Attorney for Defendants.

David Batten, Esquire, Batten Lee PLLC, Raleigh, North Carolina, Attorney *pro hac vice* for Defendants.

1

COOCH, R.J.

This 10th day of May 2018, upon consideration of Defendants' Motion in Limine to Limit the Testimony of Scott Kozin, M.D., it appears to the Court that:

1.      This case involves Plaintiffs' medical negligence claim against Defendants arising out of a vaginal delivery of minor Plaintiff, Tyra Curtis, in which she suffered what Plaintiffs allege was a permanent brachial plexus nerve injury. Plaintiffs claim that the delivering physician, Defendant Diane McCracken, M.D., applied excessive traction to deliver Tyra, which caused the injury.

2.      Defendants filed a motion in limine to limit the testimony of Plaintiff's causation expert, Scott Kozin, M.D. ("Dr. Kozin"), on January 10, 2018. Defendants seek to limit Dr. Kozin's testimony in three ways. First, Defendants request that Dr. Kozin's testimony be restricted to certain opinions at his deposition and the first trial.[1] Second, Defendants "request [that Dr. Kozin] be precluded from offering any opinions that [Plaintiff's] brachial plexus injury is 'consistent with' excessive downward lateral traction applied by the clinician" as, Defendants claim, those types of comments improperly infer opinions that Defendants breached the standard of care.[2] Third, Defendants ask that Dr. Kozin be "precluded from discussing the Lerner article at trial."[3] Defendants' argument essentially is that because Dr. Kozin "did not have a specific causation opinion beyond what was outlined herein at the time of his deposition . . . [h]e should therefore be precluded from offering opinions beyond what was initially testified to."[4]

---

[1] During an office conference before the Court on November 6, 2017, counsel for Defendants presented the scope of testimony within which Dr. Kozin should be contained for this third try of the case. Def.s' Mot. in Limine, Ex. 1 at 15-18.

[2] *Id.* at 2.

[3] *Id.* at 5.

[4] *Id.*

3. In response, Plaintiffs argue that Dr. Kozin indeed had a causation opinion prior to the second trial on October 31, 2017 and that Dr. Kozin's deposition testimony shows that he was not giving a standard of care opinion.[5] Also, Plaintiffs assert that Dr. Kozin's comments about the Lerner article at the second trial were not new opinions because Dr. Kozin "referred to it in his deposition . . . ."[6]

4. A third trial will be held in this case. The first trial resulted in a mistrial due to a hung jury. The Court declared a mistrial in the second trial due to Dr. Kozin's trial testimony, which differed from his deposition and first trial testimony and contained new opinions. Now Defendants seek to define the scope for Dr. Kozin's testimony that is consistent with both his May 26, 2016 deposition testimony and his October 31, 2017 second trial testimony. As this Court stated in granting Defendants' motion for a mistrial during the second trial, Dr. Kozin offered a new opinion in the second trial as to causation contrary to his deposition testimony and to his testimony during the first trial.[7] His previous deposition and trial testimony was that essentially that he could not offer an opinion whether maternal forces alone were enough to cause permanent brachial plexus injury. However, during the second trial, his testimony was that he could now exclude endogenous or maternal forces as a cause of permanent brachial plexus injury. This Court agrees with the parameters offered by Defendants at the November 6, 2017 office conference as to the allowable scope of his testimony and grants the motion in limine.

5. Dr. Kozin's testimony at the third trial will be limited to testimony that he provided at his deposition and to the testimony he gave at the first trial (and to which defense counsel did not object).

6. "Under 18 *Del. C.* § 6853, a party alleging medical malpractice must produce expert medical testimony that specifies (1) the

---

[5] Pl.s' Resp. to the Mot. in Limine at 2.
[6] *Id.* at 5.
[7] Tr. of Second Trial, Oct. 31, 2017, at 116.

applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury."[8] In general, experts must qualify under *Daubert's* five-step test to determine the admissibility of the expert testimony.[9] The Court must determine whether:

> (1) the witness is qualified as an expert by knowledge, skill experience, training or education; (2) the evidence is relevant; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[10]

7. The Delaware Supreme Court has held "that the requirement of a party to comply with discovery directed to identification of expert witnesses and disclosure of the substance of their expected opinion is a pre-condition to the admissibility of expert testimony at trial."[11] An expert's trial testimony must be consistent with their expert disclosure.[12]

8. Dr. Kozin's expert disclosure, pursuant to Del. Super. Ct. Civ. R. 26(b)(4), provided that "[b]ased upon his expertise, knowledge, clinical experience and his best medical judgment, Dr. Kozin will opine to the causation and damages issues of this case."[13] Plaintiffs did not identify Dr. Kozin as an expert who would be giving a standard of care opinion

---

[8] *Simmons v. Bay Health Med. Ctr., Inc.*, 2007 WL 4237723, at *1 (Del. Super. Ct. Nov. 30, 2007).
[9] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 795 (Del. 2006).
[10] *Bowen*, 906 A.2d at 795.
[11] *Bush v. HMO of Delaware, Inc.*, 702 A.2d 921, 923 (Del. 1997) (citing *Stafford v. Sears, Roebuck & Co.*, Del.Supr., 413 A.2d 1238 (1980)); Del. Super. Ct. Civ. R. 26(b)(4)(A)(i).
[12] *See, e.g., Barrow v. Abramowicz*, 931 A.2d 424, 434 (Del. 2007)

> The trial judge abused his discretion by permitting Dr. Abramowicz' testimony because the defense never identified Abramowicz as an expert who would be giving causation opinions at trial. . . . The significance of Dr. Abramowicz's noncompliance is enhanced because his pretrial testimony on the underlying causation issue contradicted his trial testimony.

[13] Pl.s' Resp. to the Mot. in Limine, Ex. A.

4

at trial. As Defendants argue, Dr. Kozin is precluded from offering an opinion that the injury in this case is "consistent with" excessive physician-applied downward lateral traction because that type of opinion carries the risk of improperly inferring to the jury that this injury was caused by a breach in the standard of care by the physician.[14] Accordingly, any proffered opinion by Dr. Kozin regarding standard of care at the third trial will be prohibited.

9. At his May 26, 2016 deposition, on the topic of physician-applied force, Dr. Kozin stated

> A: Yeah, I think the OB-GYNs will have to fight about that. What I said before is I can't tell you, in Tyra's case or any other child's case, whether the force applied . . . was excessive to deliver Tyra. I can just tell you the force was excessive to maintain the integrity of the nerves, which led to the tearing of 5, 6, and 7.
> Q: And forces are – can be multiple in nature, correct?
> A: They can be endogenous or exogenous. Exogenous being the deliverer, and endogenous meaning the propulsive forces.[15]

At a later point in Dr. Kozin's deposition testimony, Mr. Batten again on cross-examination asked Dr. Kozin to address the "force" issue.

> Q: And excessive is a bit of a loaded word, and here's why I'm going to suggest that to you. Excessive, in your vernacular, is, it was more than that nerve could take, not that there was a breach of a standard that caused excessive force, correct?
> A: Right. So it's my opinion, regardless of what the jury decides was the ultimate cause, there was excessive force to the nerve. I thought what Mr. Hudson was asking me was, if excessive, meaning excessive – I don't know what he was asking me the more I think about it. But so I think – my opinion is going to be, there was excessive force to the nerves, period. That's a given. I'm not going to say there wasn't, because there was tearing of 5, 6, and 7.

---

[14] Pl.s' Resp. to the Mot. in Limine, Ex. C at 54; Def.s' Mot. in Limine at 2.
[15] Deposition of Dr. Kozin, May 26, 2016, at 71-72.

Q: And force does not imply solely the clinician's applied traction, correct?

A: No, no. There are multiple forces.[16]

However, during the second trial, Dr. Kozin testified, "[i]t's my opinion that [the injury] occurred from the traction applied to the head, which led to the stretching of the nerves in her neck."[17] This opinion was new and different from the causation opinion he gave during his deposition above, where he had equivocated to some extent on the specific cause.

10.     Furthermore, as to the Lerner article,[18] Dr. Kozin may not provide an opinion on it, or the related video, at the third trial. At the second trial, during direct examination, Dr. Kozin relied on the Lerner article for his new opinion, which essentially excluded endogenous forces as a possibility in this case. Dr. Kozin's deposition testimony and his second trial testimony differed from his trial testimony in the first trial as it related to the Lerner article. At his deposition, when asked by counsel for Defendants, Mr. Batten, Dr. Kozin testified as follows:

Q: And so I'm clear, can the maternal propulsive forces alone of pushing the baby down the birth canal be enough to cause a permanent injury without any physician intervention?

A: I think that's unclear.

Q: Okay. The answer is you don't know?

A: I don't know.

Q: Can you see any report of a permanent injury occurring in the absence of shoulder dystocia, case report out there? Do you know what I'm talking about?

A: Lerner.

Q: Yeah. Have you seen that video?

A: I think it's L-E-R-N-E-R, right?

Q: It is. Have you seen the video?

A: I don't recall seeing the video.

---

[16] *Id.* at 114.

[17] Def.s' Mot. in Limine, Ex. 3 at 49.

[18] Henry M. Lerner, MD, *A summary of the new ACOG report on neonatal brachial plexus palsy. Part 1: Can it be predicted?*, VOL. 26 OBG MANAGEMENT NO. 9, (Sept. 2014), https://www.mdedge.com/sites/default/files/Document/September-2017/OBG_0914_Lerner.pdf, describes a case where a neonatal brachial plexus palsy injury occurred in a delivery where there was no traction applied by the delivering physician. Pl.s' Resp. to the Mot. in Limine at 6, n.1.

Q: All right. Have you read his report?
A: Awhile back, yes.
Q: Okay.
A: And there's some rebuttal afterwards and another heated argument.
Q: Do you dispute the existence of what he reported?
A: I don't dispute what was reported. I know it's been attempted to be disputed, but it has not been retracted.[19]

The above testimony differed from Dr. Kozin's testimony on direct examination by counsel for the Plaintiffs, Mr. Hudson, at the second trial. At his deposition, Dr. Kozin had given a brief, cursory acknowledgement of the existence of the Lerner report,[20] but at trial he discredited the report's findings:

Q: Are you aware of any credible medical study reporting that a permanent brachial plexus injury during a delivery can occur, or has occurred in the absence of traction in a shoulder dystocia case?
A: No, I'm not.

. . .

Q: And tell us do you consider [the Lerner case report] a credible report?
A: I do not. Most of that report has been discredited by either deposition testimony or review of the records from the case.

. . .

Q: In the summary here it says that the delivery resulted in a permanent brachial plexus injury unassociated with shoulder dystocia or physician traction. And it is being reported by the delivering physician. This case demonstrates unequivocally that not all permanent brachial plexus injury at vaginal birth is due to physical traction. Is this a correct statement of the facts of this case report?
A: That's inconsistent with subsequent reports.[21]

Dr. Kozin's opinion at the second trial that the Lerner study, which appears to state that this injury may occur without physician or exogenous forces, was not "credible" and was

---

[19] Def.s' Mot. in Limine, Ex. 2 at 90-91.
[20] Dr. Kozin only referenced the Lerner article in his deposition when asked about it by Mr. Batten on cross examination. Dr. Kozin had not not mentioned it on direct examination. *See generally id.*
[21] Def.s' Mot. in Limine, Ex. 3 at 65-67.

"inconsistent with subsequent reports" is a significant departure from his deposition testimony where he stated that he did not "dispute what was reported" in the Lerner study. In contrast, and during his deposition, Dr. Kozin had stated that the excessive force applied on the nerves "can be endogenous or exogenous [where] [e]xogenous [means] the deliverer, and endogenous mean[s] the propulsive forces."[22] By testifying at trial that, in his medical expertise, the Lerner study deserves no worthy consideration, Dr. Kozin, in effect, ruled out endogenous forces as a causative factor in this injury.

11.     Dr. Kozin will be precluded from discussing the video associated with the Lerner study as well. Dr. Kozin testified at his deposition that he had not seen it.[23] However, during the second trial, Dr. Kozin stated that he had indeed watched that video (which had been sent to him "a couple weeks" before the second trial "from a plaintiff's lawyer [in New Jersey] in a medical negligence case" unrelated to this case).[24]

> Q: Dr. Kozin, in terms of your personal knowledge of the circumstances involved in this delivery, which represented that it was permanent injury but no traction and no shoulder dystocia, have you seen a video that was taken during the delivery by one of the family members?
> A: I recently saw the video, yes.
> Q: Does the video show whether traction or not was used? The article says it was no traction, what does the video show?
> A: I can't see anything in the video with reference to whether traction was applied or not.
> Q: You've watched the video?
> A: I just recently was able to obtain the video.
> Q: And the video – it is inconclusive because of the view being blocked as to whether the physician applied traction?[25]

---

[22] Def.s' Mot. in Limine, Ex. 2 at 71-72. Dr. Kozin describes "propulsive forces" as "maternal propulsive forces . . . if they're really pushing, that can lead to increase push on the baby as they come down the canal." *Id.* at 72.

[23] *Id.* at 91 ("Q: It is. Have you seen the video? A: I don't recall seeing the video.").

[24] Def.s' Mot. in Limine, Ex. 3 at 82- 91.

[25] Def.s' Mot. in Limine, Ex. 3 at 71-72.

12. As an expert, Dr. Kozin may not expand the scope of his original deposition and first trial opinions to these bounds. His second trial testimony was not only different from his previous deposition testimony, but was contrary to it. Also, as stated on his expert disclosure, Dr. Kozin's role in this case is as a causation expert. As such, he may not offer any opinion as to the standard of care in this case. Dr. Kozin's testimony must coincide with his deposition testimony. Accordingly, Defendants' Motion in Limine to Limit the Testimony of Scott Kozin, M.D. is **GRANTED.**

13. As the Court has advised counsel, the Pretrial Stipulation must state, in detail, the substance of what Dr. Kozin may testify to, and what he may not testify to, in order to further ensure that the problems with his testimony in the second trial do not occur in the third trial.

**IT IS SO ORDERED.**

_____
Richard R. Cooch, J.

cc: Prothonotary